1

Lori E. Andrus (SBN 205816; lori@libertylaw.com)

2 | Micha Star Liberty (SBN 215687; micha@libertylaw.com)
Jennie Lee Anderson (SBN 203586; jennie@libertylaw.com)

3 | ANDRUS LIBERTY & ANDERSON LLP
1438 Market Street

4 | San Francisco, CA 94102
Telephone: (415) 896-1000

5 | Facsimile: (415) 896-2249

6 | Stan S. Mallison (SBN184191; stanm@mallisonlaw.com )
Hector R. Martinez (SBN 206336; hectorm@mallisonlaw.com)

7 | LAW OFFICES OF MALLISON & MARTINEZ
1042 Brown Avenue, Suite A

8 | Lafayette, CA 94549
Telephone: (925) 283-3842

9 | Facsimile: (925) 283-3426

10 | Attorneys for Plaintiff and the Proposed Class

FILED

28

E-Filing

ORIGINAL

JSW

11 |                    UNITED STATES DISTRICT COURT

12 |              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

ASPEN BUILDING TECHNOLOGY, INC., on behalf of

14 | itself and all others similarly situated,

Case No.: C 07 2995

15 |              Plaintiff,

16 |              v.

**CLASS ACTION**

17 | LG PHILIPS LCD CO., LTD.; LG PHILIPS LCD AMERICA,
INC.; SAMSUNG ELECTRONICS CO. LTD.; SHARP

**COMPLAINT**

18 | CORPORATION; SHARP ELECTRONICS

**DEMAND FOR JURY TRIAL**

19 | CORPORATION; TOSHIBA CORPORATION; TOSHIBA
MATSUSHITA DISPLAY TECHNOLOGY CO., LTD.;

20 | HITACHI LTD.; HITACHI DISPLAYS, LTD.; HITACHI
AMERICA LTD.; HITACHI ELECTRONIC DEVICES

21 | (USA), INC.; EPSON IMAGING DEVICES
CORPORATION; NEC CORPORATION; NEC LCD

22 | TECHNOLOGIES, LTD.; NEC ELECTRONICS AMERICA,
INC.; IDT INTERNATIONAL LTD.; AU OPTRONICS;

23 | INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD.;
INTERNATIONAL DISPLAY TECHNOLOGY USA INC.;

24 | AU OPTRONICS CORPORATION AMERICA; CHI MEI
OPTOELECTRONICS; CHI MEI OPTOELECTRONICS

25 | USA, INC.; CHUNGHWA PICTURE TUBES LTD.; and
HANNSTAR DISPLAY CORPORATION,

26

27 |              Defendants.

28

1    Plaintiff, by and through its attorneys of record, brings this civil action for damages and

2  injunctive relief on behalf of itself and all others similarly situated against the above-named

3  Defendants, and demanding a trial by jury, alleges on information and belief as follows:

4                                **JURISDICTION AND VENUE**

5

6        1.       This complaint is filed under Section 16 of the Clayton Act (15 U.S.C.

7  §26) seeking injunctive relief for violations of Section 1 of the Sherman Act (15 U.S.C. §1),

8  damages under state antitrust and consumer protection laws, and costs of suit, including

9  reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained

10  as a result of the Defendants' violations of these laws.

11        2.       This Court has jurisdiction over the federal claim under 28 U.S.C. §§1331

12  and 1337. This Court also has jurisdiction over state law claims set forth herein under 28 U.S.C.

13  §1367 because those claims are so related to the federal claim that they form part of the same case

14  or controversy. This Court also has jurisdiction over the state law claims under 28 U.S.C. §1332

15  because the amount in controversy for the Class exceeds $5,000,000, and there are members of

16  the Class who are citizens of a different state than the Defendants.

17        3.       Venue is proper in this District pursuant to 15 U.S.C. §22 and 28 U.S.C.

18  §1391 because Defendants reside, transact business, or are found within this District, and a

19  substantial part of the events giving rise to the claims arose in this District.

20        4.       The activities of the Defendants and their co-conspirators, as described

21  herein, were within the flow of, were intended to, and did have a substantial effect on the foreign

22  and interstate commerce of the United States.

23                                        **DEFINITIONS**

24        5.       As used herein, the term "TFT-LCD Products" and "TFT-LCD Panels"

25  refers to Thin Film Transistor Liquid Crystal Display products, including those used in

26  televisions, computer monitors, mobile phones, personal digital assistants (**"PDA's"**) and other

27  devices.

28

- 2 -

6.    The term "Class Period" as used herein refers to the time period extending from at least January 1, 1998 through at least December 31, 2005.

## THE PARTIES

### Plaintiff

7.    Plaintiff, Aspen Building Technology, Inc., ("Plaintiff") is, and at all times relevant times has been, a California Corporation located in Lafayette, California. Plaintiff indirectly purchased a TFT-LCD Panel from one or more of the Defendants during the Class Period, for use in its office and not for resale, and was injured as a result of Defendants' illegal conduct alleged herein.

### Defendants

8.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business in Seoul, Republic of Korea. LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD. LG Philips maintains offices within this District in San Jose, California. During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.    Defendant LG Philips LCD America, Inc., is an entity organized under the laws of California with its principal place of business located in San Jose, California. During the Class Period, LG Philips LCD America, Inc., manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10.    Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business in Seoul, Korea. During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

11.    Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business in Osaka, Japan. During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

- 3 -

1    12.    Defendant Sharp Electronics Corporation is a wholly-owned and controlled

2    subsidiary of Sharp Corporation, with its principal place of business in Mahwah, New Jersey.

3    During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT -

4    LCD Products to customers throughout the United States.

5    13.    Defendants Sharp Corporation and Sharp Electronics Corporation are

6    referred to collectively herein as "Sharp."

7    14.    Defendant Toshiba Corporation is a business entity organized under the

8    laws of Japan, with its principal place of business in Tokyo, Japan. During the Class Period,

9    Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers

10    throughout the United States.

11    15.    Defendant Toshiba Matsushita Display Technology Co., Ltd., is a business

12    entity organized under the laws of Japan with its principal place of business in Tokyo, Japan.

13    During the Class Period, Toshiba Matsushita Display Technology Co., Ltd., manufactured, sold

14    and distributed TFT-LCD Products to customers throughout the United States.

15    16.    Defendants Toshiba Corporation and Toshiba Matsushita Display

16    Technology Co., Ltd. are referred to collectively herein as "Toshiba."

17    17.    Defendant Hitachi Ltd. is a business entity organized under the laws of

18    Japan, with its principal place of business in Tokyo, Japan. During the Class Period, Hitachi Ltd.

19    manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

20    18.    Defendant Hitachi Displays, Ltd., is a business entity organized under the

21    laws of Japan, with its principal place of business in Tokyo, Japan.  During the Class Period,

22    Hitachi Displays, Ltd., manufactured, sold and distributed TFT-LCD Products to customers

23    throughout the United States.

24    19.    Defendant Hitachi America Ltd., a wholly-owned and controlled subsidiary

25    of Defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of

26    New York, with its principal place of business in Tarrytown, New York. During the Class Period,

27    Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers

28    throughout the United States.

- 4 -

1    20.    Defendant Hitachi Electronic Devices (USA), Inc., a wholly-owned and

2    controlled subsidiary of Defendant Hitachi Ltd., is a business entity with its principal place of

3    business located in Greenville, South Carolina. During the Class Period, Hitachi Electronic

4    Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers

5    throughout the United States.

6    21.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and

7    Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi."

8    22.    Defendant Epson Imaging Devices Corporation ("Epson") was a joint

9    venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., and became a wholly owned

10    subsidiary of Seiko Epson Corporation in 2006. Defendant Epson's principal place of business is

11    in Nagano, Japan. During the Class Period, Epson and/or its predecessors entities manufactured,

12    sold and distributed TFT-LCD Products to customers throughout the United States.

13    23.    Defendant NEC Corporation is a business entity organized under the laws

14    of Japan with its principal place of business in Tokyo, Japan. During the Class Period, NEC

15    Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the

16    United States.

17    24.    Defendant NEC LCD Technologies, Ltd. is a wholly-owned and controlled

18    subsidiary of Defendant NEC Corporation, organized under the laws of Japan with its principal

19    place of business in Kanagawa, Japan. During the Class Period, NEC LCD Technologies, Ltd.

20    manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

21    25.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly-owned and

22    controlled subsidiary of NEC Electronics Corporation, with its principal place of business in

23    Santa Clara, California and its manufacturing facility in Roseville, California. During the Class

24    Period, NEC manufactured, sold and distributed TFT-LCD Products to customers throughout the

25    United States.

26    26.    Defendant IDT International Ltd. is an entity organized under the laws of

27    Bermuda with its principal place of business in Hong Kong. During the Class Period, IDT

28

- 5 -

1  International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout
2  the United States.

3    27.    Defendant International Display Technology Co., Ltd., is an entity
4  organized under the laws of Japan with its principal place of business in Tokyo, Japan.
5  Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei
6  Optoelectronics Corporation. During the Class Period, Defendant International Display
7  Technology Co., Ltd. manufactured, sold, and distributed TFT-LCD Products to customers
8  throughout the United States.

9    28.    Defendant International Display Technology USA Inc. is corporation with
10  its principal place of business in San Jose, California. Defendant International Display
11  Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation. During
12  the Class Period, Defendant International Display Technology USA Inc. manufactured, sold, and
13  distributed TFT-LCD Products to customers throughout the United States.

14    29.    Defendant AU Optronics is a manufacturer of TFT-LCD Products with its
15  corporate headquarters in Hsinchu, Taiwan, R.O.C. During the Class Period, AU Optronics
16  manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

17    30.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly-
18  owned and controlled subsidiary of Defendant AU Optronics with its corporate headquarters in
19  Houston, Texas. AUOCA also maintains a facility in San Diego, California. During the Class
20  Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout
21  the United States.

22    31.    Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a
23  manufacturer of TFT-LCD Products with its global headquarters in Tainan County, Taiwan,
24  R.O.C. During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products
25  to customers throughout the United States.

26    32.    Defendant Chi Mei Optoelectronics USA, Inc., is a wholly-owned and
27  controlled subsidiary of Chi Mei with its corporate headquarters in San Jose, California. During

28

- 6 -

1    the Class Period, Chi Mei Optoelectronics USA, Inc., manufactured, sold and distributed TFT-

2    LCD Products to customers throughout the United States.

3          33.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading

4    manufacturer of TFT-LCD Products and has its global headquarters in Padeh City, Taoyuan,

5    Taiwan, R.O.C.  During the Class Period, Chunghwa manufactured, sold and distributed TFT-

6    LCD Products to customers throughout the United States.

7          34.    Defendant HannStar Display Corporation ("HannStar") is a manufacturer

8    of TFT-LCD Products headquartered in Taipei, Taiwan, R.O.C.  During the Class Period,

9    HannStar manufactured, sold and distributed TFT-LCD Products to customers throughout the

10    United States.

11    **Co-Conspirators**

12          35.    In addition to the Defendants, various others presently unknown to Plaintiff

13    participated as co-conspirators with the Defendants in the violations of law alleged in this

14    Complaint and have engaged in conduct and made statements in furtherance of those violations.

15          36.    The illegal conduct alleged herein was conducted by Defendants and their

16    co-conspirators, or was authorized, ordered or conducted by their respective officers, agents,

17    employees and/or representatives acting on behalf of Defendants and/or their co-conspirators.

18          37.    Each of the Defendants named herein acted as the agent of, or together in a

19    joint business venture with, the other Defendants with respect to the acts, violations and common

20    course of conduct alleged herein.

21    **CLASS ALLEGATIONS**

22          38.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and

23    23(b)(3) of the Federal Rules of Civil Procedure, on behalf of itself and the following class of

24    plaintiffs (the "Class"):

25        All persons and entities residing in the United States who purchased
     TFT-LCD Products in the United States from January 1, 1998,

26    through December 31, 2005, indirectly from the Defendants for their
     own use and not for resale.

27

28

- 7 -

1    39.    Specifically excluded from the Class are Defendants, the officers, directors

2    or employees of any Defendant, any entity in which and Defendant has a controlling interest, and

3    any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are any federal,

4    state or local governmental entities, any judicial officer presiding over this action and the

5    members of his/her immediate family and judicial staff, and any juror assigned to this action.

6    40.    This action has been brought and may be properly maintained as a class

7    action pursuant to Federal Rule of Civil Procedure 23 for the following reasons:

8    a.    The Class is ascertainable and there is a well-defined community of

9    interest among the members of the Class;

10    b.    The Class is sufficiently numerous, including, on information and

11    belief, thousands of indirect purchasers of TFT-LCD Products, such that joinder of all Class

12    members is not practicable;

13    c.    Plaintiff's claims are typical of the claims of the members of the

14    Class because Plaintiff indirectly purchased TFT-LCD Products from one or more of the

15    Defendants or their co-conspirators, and its claims therefore arise from the same common course

16    of conduct giving rise to the claims of the members of the Class and the relief sought is common

17    to the Class;

18    d.    The following common questions of law or fact, among others,

19    exist as to the members of the Class:

20    i)    whether Defendants formed and operated a combination or

21    conspiracy to fix, raise, maintain or stabilize the prices of, or

22    allocate the market for, TFT-LCD Products;

23    ii)    whether the combination or conspiracy caused TFT-LCD

24    Products prices to be higher than they would have been in

25    the absence of Defendants' conduct;

26    iii)    the operative time period of Defendants' combination or

27    conspiracy;

28
- 8 -

1        **iv)**   whether Defendants' conduct caused injury to Plaintiff and

2            the members of the Class;

3        **v)**   the appropriate measure of the amount of damages suffered

4            by Plaintiff and the Class;

5        **vi)**   whether Defendants' conduct violates Section 1 of the

6            Sherman Act;

7        **vii)**   whether Defendants' conduct violates Sections 16720 and

8            17200 of the California Business and Professions Code;

9        **viii)**   whether Defendants' conduct violates the antitrust, unfair

10           competition, and consumer protection laws of the other

11           states as alleged below; and

12       **ix)**   the appropriate nature of class-wide equitable relief.

13       e.   These and other common questions of law or fact predominate over

14   any questions affecting only individual members of the Class;

15       f.   To the degree separate subclasses are necessary to foster

16   manageability in the future, those may be created after determination of the predominate common

17   issues identified above, if necessary or appropriate;

18       g.   Plaintiff will fairly and adequately protect the interests of the Class

19   in that Plaintiff has no interests that are antagonistic to other members of the Class and has

20   retained counsel competent and experienced in the prosecution of class actions and antitrust

21   litigation to represent themselves and the Class;

22       h.   A class action is superior to other available methods for the fair and

23   efficient adjudication of this litigation since individual joinder of all damaged Class members is

24   impractical. The damages suffered by individual Class members are relatively small, given the

25   expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

26   absent the availability of class action procedures, it would not be feasible for Class members to

27   redress the wrongs done to them. Even if the Class members could afford individual litigation,

28   the large number of individual actions would overburden the court system. Further, individual

- 9 -

1   litigation presents the potential for inconsistent or contradictory judgments and would greatly

2   increase the delay and expense to all parties and to the courts. The class action device will

3   provide the benefits of uniform adjudication, economy of scale and comprehensive supervision by

4   a single court;

5                  i.      Defendants have acted, and refused to act, on grounds generally

6   applicable to the Class, thereby making final injunctive relief with respect to the Class as a whole

7   appropriate; and

8                  j.      In the absence of a class action, Defendants would be unjustly

9   enriched because they would be able to retain the benefits and fruits of their illegal conduct.

10

## NATURE OF TRADE AND COMMERCE

11

12          41.     Throughout the Class Period, Defendants and their co-conspirators engaged

13   in the business of marketing and selling TFT-LCD Products throughout the United States.

14          42.     TFT-LCD stands for the thin-film transistor liquid crystal display, which

15   screens picture information by adjusting the amount of light permitted. (http://www.lgphilips-

16   lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp). Defendant LG Philips indicates on their

17   website that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control

18   liquid crystals...This circuit plays a vital role in controlling each pixel, the basic unit of a picture

19   image. The color filter displays a color image by coating the pixel (red, green and blue) on a glass

20   substrate." *Id.*

21          43.     Explaining how TFT-LCD works, Defendant LG Philips describes the

22   technology as follows:

23          A pixel, the smallest unit to indicate a picture image, is formed by
            three sub-pixels consisting of red, green, and blue. The number of
24          pixels arranged in a display determines the resolution of the TFT-
            LCD. TFT is composed of the data line (image signal transfer) and
25          17 gate line (TFT on/off signal transfer).

26          TFT existing in each sub-pixel controls the voltage difference
            between the TFT glass electrode and the color filter glass electrode in
27          order to adjust the molecular array of liquid crystals. Such a change
            in the molecule direction of liquid crystals alters the amount of light
28                                          - 10 -

1    penetrating the liquid crystal layer. Consequently, the TFT-LCD
      display shows picture image information.

2

3    (http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp).

4        44.    Common applications for the TFT-LCD technology include flat screen

5    televisions, camcorders, computer monitors and PDA's.

6        45.    The market for TFT-LCD Products is enormous and growing. An October

7    10, 2006, article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for

8    TVs this year alone, up 70 percent over 2005, while flat-panel sales –most of those using LCD

9    technology –are expected to reach $US 88 billion this year and $US 100 billion in 2007...."

10   (www.theage.com.au/news/home-theatre/they-are-building-it-but-will-lcd-

11   salescome/2006/10/09/1160246068541.html#).

12       46.    The manufacturing and sales market for TFT-LCD Products is highly

13   conducive to the type of collusive activity alleged here because the market is largely controlled by

14   a handful of large companies. In 2005, LG Philips had 21.4% of the large TFT-LCD panel global

15   market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and

16   Chunghwa had 7.3%, while the remaining suppliers controlled 24.1.

17   (http://www.eetimes.com/showArticle.jhtml;jsessionid=ETAKTDSOR5UJEQSNDLRCKHSCJU

18   NN2JVN?articleID=177101936). In 2006, Samsung took over the leading position in the

19   industry. (www.reuters.com/article/ousiv/idUSSEO35123020061212).

20       47.    Some of these companies are known antitrust violators. Samsung, for

21   example, was fined $300 million by the United States Department of Justice ("DOJ") in October

22   of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory.

23   (http://www.usdoj.gov/atr/public/press_releases/2005/212002.htm). It is also under investigation

24   by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access

25   Memory.  (http://www.reghardware.co.uk/2006/10/13/doj_sram_probe/).

26       48.    The industry is also known for utilizing cross-licensing agreements that

27   facilitate collusion. AU Optronics, for example, entered into licensing arrangements with Sharp

28

- 11 -

1    in 2005 and Samsung in 2006. Chi Mei has licensing arrangements with Sharp, AU Optronics,

2    Chunghwa, HannStar and Hitachi.

3        49.    The market for the manufacture and sale of TFT-LCD Products is also

4    subject to high manufacturing and technological barriers to entry. Efficient plants are large and

5    expensive to set up and maintain. TFT-LCD Products are also subject to technological advances

6    requiring companies in the industry to undertake significant research and development expenses.

7        50.    There was also significant consolidation within the TFT-LCD Products

8    industry during the Class Period, as reflected in AU Optronics' recent acquisition of Quanta

9    Display, the creation in 2001 of AU Optronics itself through the merger of Acer Display and

10   Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

11       51.    Defendants sell their TFT-LCD Products through various channels of

12   commerce, including to manufacturers of electronic products and devices, and to resellers. The

13   TFT-LCD Products, and the electronic products and devices in which they are installed, are then

14   sold, directly or indirectly, to consumers and are not altered during the course of sale.

15       52.    California is the largest market in the world for TFT-LCD Products and is

16   the worldwide center of the PC industry and other industries that depend upon the TFT -LCD

17   Products market. Statements concerning the prices and market conditions for TFT-LCD Products

18   were disseminated by Defendants from and into California on a regular and continuous basis.

19

20                        **DEFENDANTS' ILLEGAL CONDUCT**

21       53.    Defendants and their co-conspirators have engaged in a contract,

22   combination, trust or conspiracy, the effect of which was to raise the prices at which they sold

23   TFT-LCD Products and artificially inflate levels from at least January 1, 1998, through at least

24   December 31, 2005.

25       54.    Antitrust enforcement authorities in multiple countries have recently begun

26   investigating this unlawful cartel.

27       55.    In December 2006, antitrust authorities in the United States, Korea, the

28   Europe and Japan began investigating allegations of price-fixing allegations in the TFT-LDC

                                        - 12 -

1    industry, including allegations against the world's two leading makers of flat-panel displays,

2    Samsung and LG Philips. *Id.;* (http://www.iht.com/articles/2006/12/12/business/flat.php).

3            56.      On December 11, 2006, Defendant LG Philips, in its Form 6-K filed with

4    the SEC, stated the following:

5    
6            Last Friday, as part of an investigation of possible
        anticompetitive conduct in the LCD industry, officials from the
        Korean Fair Trade Commission (KFTC) visited the offices of
7            LG Philips LCD in Seoul Korea. In addition, the Japanese Fair
        Trade Commission (JFTC) issued a notice to our offices, in
8            Tokyo, Japan and then United States Department of Justice
        (DOJ) issued a subpoena to our offices in San Jose, California.
9    

10    (http://ssb.brand.edgar-
online.com/EFX_dll/EDGARpro.dll?FetchFilingRTF1?SessionID=QYZBCgomAhvkiWr&ID=4
11    814529).

12    

13            57.      On December 11, 2006, the Reuters news agency reported the following:

14            Samsung Electronics Co. Ltd. (005930.KS) is being investigated
        by fair trade watchdogs in South Korea, Japan and the United
15            States, the second Korean flat screen maker named in a probe
        into possible price-fixing, a news agency report said on Tuesday.
16    
17            The report, from South Korea's Yonhap news agency, follows a
        disclosure by LG Philips LCD Co. Ltd. (034220.KS) on Monday
18            that it was the target of an investigation by the Korean Fair
        Trade Commission (KFTC), the Japanese Fair Trade
19            Commission (JFTC) and had received a subpoena from the U.S.
        Department of Justice...
20    
21            Yonhap cited unnamed regulatory and industry sources in
        reporting local antitrust authorities were also looking into
22            possible collusion by Samsung and LG Philips to fix the prices
        of LCD products and control their supply...
23    
24            Late on Monday, a KFTC spokesman said the probe was being
        conducted by the Cartel Investigation Group.
25    (www.reuters.com/article/ousiv/idUSSEO35123020061212).

26            58.      By December 15, 2006, AU Optronics, Chi Mei, and Sharp indicated they

27    were also are being investigated.

28    (http://www.bloomberg.com/apps/news?pid=newsarchive&sid=ac8iAyvZHfNA).

- 13 -

1    59.    Analysts at Daewoo Securities Co. and Hyundai Securities Co. reported

2    that fines may exceed $1 billion should authorities find that the panel makers colluded.

3    (http://www.bloomberg.com/apps/news?pid=newsarchive&sid=ac8iAyvZHfNA).

4    60.    On information and belief, the investigation may be focused on a period

5    over the last several years when manufacturers of TFT-LCD Products were charging comparable

6    prices.

7    61.    Other indicators suggest that Defendants have engaged in collusive

8    activity. A "Crystal Cycle" is an industry term referring to shortages in the supply-and-demand

9    cycle for LCD displays. Chris Connery, an industry analyst at DisplaySearch, was recently cited

10   as indicating that "the talk in the industry is that the manufacturers are looking to create an

11   artificial Crystal Cycle. At a recent conference in Taiwan, a leading producer of LCD glass stated

12   publicly that the industry should collectively look at cutting back on production from 100 percent

13   to at least 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut

14   prices....Will the mother-glass manufacturers actually create this artificial shortage? 'The chatter

15   is growing louder each day,' Connery says."

16   (http://www.infoworld.com/archives/emailPrint.jsp?R=printThis&A=/article/06/06/13/79145_25

17   OPreality_1.html).

18   62.    Defendants, through their officers, directors and employees, effectuated the

19   aforementioned contract, combination, trust or conspiracy between themselves and their co-

20   conspirators by, among other things:

21        a.    participating in meetings and conversations, including through

22   various trade associations and committees, to discuss the prices of TFT-LCD Products in the

23   United States;

24        b.    agreeing, during those meetings and conversations, to charge prices

25   at specified levels and otherwise to increase and maintain prices of TFT-LCD Products sold in the

26   United States;

27        c.    issuing price announcements and quotations in accordance with the

28   agreements reached; and

- 14 -

1              d.      selling TFT-LCD Products to various customers in the United

2    States at non-competitive prices.

3              63.    Defendants' contract, combination, trust or conspiracy was centered in,

4    carried out, effectuated and perfected mainly in the State of California.  Therefore, all members of

5    the Class, whether or not California residents, are entitled to recover under California law, as well

6    as the laws of their own states.

                                    **ACTIVE CONCEALMENT**

7

8              64.    Throughout and beyond the conspiracy, Defendants and their co-

9    conspirators actively concealed their unlawful conduct from Plaintiff. Defendants and their co-

10   conspirators conducted their conspiracy in secret and kept it primarily within the confines of their

11   higher-level executives.  Defendants and their co-conspirators publicly provided pretextual and

12   false justifications regarding their price increases.  Defendants and their co-conspirators

13   conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts

14   in furtherance thereof, and actively concealed their activities through various other means and

15   methods to avoid detection.  Plaintiff did not discover, and could not have discovered through the

16   exercise of reasonable diligence, that Defendants and their co-conspirators were violating the

17   antitrust laws as alleged herein until shortly before this class action litigation was commenced.

18             65.    As a result of the active concealment of the conspiracy by Defendants and

19   their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the

20   allegations herein have been tolled.

21

22                                  **VIOLATIONS ALLEGED**

23                                    **First Claim For Relief**
                               **(Violation of Section 1 of the Sherman Act)**
24

25             66.    Plaintiff incorporates and realleges, as though fully set forth herein, each

     and every allegation set forth in the preceding paragraphs of this Complaint.
26

               67.    Beginning at a time presently unknown to Plaintiff, but at least as early as
27

     January 1, 1998, and continuing through December 31, 2005, the exact dates being unknown to
28

                                            - 15 -

1   Plaintiff, Defendants and their co-conspirators entered into a continuing agreement,

2   understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or

3   stabilize prices for TFT-LCD Products in the United States, in violation of Section 1 of the

4   Sherman Act (15 U.S.C. §1).

5           68.    In formulating and carrying out the alleged agreement, understanding, and

6   conspiracy, the Defendants and their co-conspirators did those things that they combined and

7   conspired to do, including but not limited to the acts, practices, and course of conduct set forth

8   above, and the following, among others:

9                  a.     To fix, raise, maintain and stabilize the price of TFT-LCD

10  Products;

11                 b.     To allocate markets for TFT-LCD Products among themselves;

12                 c.     To submit rigged bids for the award and performance of certain

13  TFT-LCD Products contracts; and

14                 d.     To allocate among themselves and collusively reduce the

15  production of TFT-LCD Products.

16          69.    The combination and conspiracy alleged herein has had the following

17  effects, among others:

18                 a.     Price competition in the sale of TFT-LCD Products has been

19  restrained, suppressed, and/or eliminated in the United States;

20                 b.     Prices for TFT-LCD Products sold by Defendants and their

21  coconspirators have been fixed, raised, maintained and stabilized at artificially high, non-

22  competitive levels throughout the United States; and

23                 c.     Those who purchased TFT-LCD Products directly or indirectly

24  from Defendants and their co-conspirators have been deprived of the benefits of free and open

25  competition.

26          70.    Plaintiff and the Class have been injured and will continue to be injured in

27  their business and property by paying more for TFT-LCD Products purchased indirectly from the

28  Defendants and their co-conspirators than they would have paid and will pay in the absence of the

- 16 -

1    combination and conspiracy, including paying more for personal computers and other products in

2    which TFT-LCD Products is a component as a result of higher prices paid for TFT-LCD Products

3    by the manufacturers of those products.

4            71.    Plaintiff and the Class are entitled to an injunction against Defendants,

5    preventing and restraining the violations alleged herein.

### Second Claim for Relief
### (Violation of the California Cartwright Act)

8            72.    Plaintiff incorporates and realleges, as though fully set forth herein, each

9    and every allegation set forth in the preceding paragraphs of this Complaint.

10           73.    Defendants' contract, combination, trust or conspiracy was centered in,

11   carried out, effectuated and perfected mainly within the State of California, and Defendants'

12   conduct within California injured all members of the Class throughout the United States.

13   Therefore, this claim for relief under California law is brought on behalf of all members of the

14   Class, whether or not they are California residents.

15           74.    Beginning at a time presently unknown to Plaintiff, but at least as early as

16   January 1, 1998, and continuing thereafter at least up to December 31, 2005, Defendants and their

17   co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade

18   and commerce described above in violation of Section 16720, California Business and

19   Professional Code. Defendants, and each of them, have acted in violation of Section 16720 to fix,

20   raise, stabilize and maintain prices of, and allocate markets for, TFT-LCD Products at supra-

21   competitive levels.

22           75.    The aforesaid violations of Section 16720, California Business and

23   Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of

24   action among the Defendants and their co-conspirators, the substantial terms of which were to fix,

25   raise, maintain and stabilize the prices of, and to allocate markets for, TFT-LCD Products.

26           76.    For the purpose of forming and effectuating the unlawful trust, the

27   Defendants and their co-conspirators have done those things which they combined and conspired

28

- 17 -

1    to do, including but in no way limited to the acts, practices and course of conduct set forth above

2    and the following:

3              a.    to fix, raise, maintain and stabilize the price of TFT-LCD Products;

4              b.    to allocate markets for TFT-LCD Products amongst themselves;

5              c.    to submit rigged bids for the award and performance of certain

6    TFT-LCD Products contracts; and

7              d.    to allocate amongst themselves the production of TFT-LCD

8    Products.

9              77.    The combination and conspiracy alleged herein has had, *inter alia*, the

10    following effects:

11              a.    price competition in the sale of TFT-LCD Products has been

12    restrained, suppressed and/or eliminated in the State of California and throughout the United

13    States;

14              b.    prices for TFT-LCD Products sold by Defendants and their co-

15    conspirators have been fixed, raised, maintained and stabilized at artificially high, non-

16    competitive levels in the State of California and throughout the United States; and

17              c.    those who purchased TFT-LCD Products from Defendants and their

18    co-conspirators have been deprived of the benefit of free and open competition.

19              78.    Plaintiff and the other members of the Class paid supra-competitive,

20    artificially inflated prices for TFT-LCD Products.

21              79.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff

22    and the members of the Class have been injured in their business and property in that they paid

23    more for TFT-LCD Products than they otherwise would have paid in the absence of Defendants'

24    unlawful conduct. As a result of Defendants' violation of Section 16720 of the California

25    Business and Professions Code, Plaintiff seeks treble damages and the costs of suit, including

26    reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

27    Professions Code.

28

**Third Claim for Relief**
**(Violation of the California Unfair Competition Law)**

80. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

81. Defendants' business acts and practices were centered in, carried out, and effectuated mainly within the State of California, and Defendants' conduct within California injured all members of the Class throughout the United States. Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

82. Beginning on a date unknown to Plaintiff, but at least as early as January 1, 2002, and continuing thereafter at least up through December 31, 2005, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

83. This Claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

84. The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:

a. The violations of Section 1 of the Sherman Act, as set forth above;

b. The violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

c. Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the

1  California Business and Professions Code, and whether or not concerted or independent acts, are

2  otherwise unfair, unconscionable, unlawful or fraudulent;

3             d.     Defendants' act and practices are unfair to consumers of TFT-LCD

4  Products in the State of California and throughout the United States, within the meaning of

5  Section 17200, California Business and Professions Code; and

6             e.     Defendants' acts and practices are fraudulent or deceptive within

7  the meaning of Section 17200 of the California Business and Professions Code.

8          85.     Plaintiff and each of the Class members are entitled to full restitution

9  and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may

10  have been obtained by Defendants as a result of such business acts or practices.

11          86.     The illegal conduct alleged herein is continuing and there is no indication

12  that Defendants will not continue such activity into the future.

13          87.     The unlawful and unfair business practices of Defendants, and each of

14  them, as described above, have caused and continue to cause Plaintiff and the members of the

15  Class to pay supra-competitive and artificially-inflated prices for TFT-LCD Products. Plaintiff

16  and the members of the Class suffered injury in fact and lost money or property as a result of such

17  unfair competition.

18          88.     The conduct of Defendants as alleged in this Complaint violates Section

19  17200 of the California Business and Professions Code.

20          89.     As alleged in this Complaint, Defendants and their co-conspirators have

21  been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair

22  competition, Plaintiff and the members of the Class are accordingly entitled to equitable relief

23  including restitution and/or disgorgement of all revenues, earnings, profits, compensation and

24  benefits which may have been obtained by Defendants as a result of such business practices,

25  pursuant to the California Business and Professions Code, Sections 17203 and 17204.

26

27  **Fourth Claim for Relief**
**(Violation of State Antitrust and Unfair Competition Laws)**

28

- 20 -

1        90.    Plaintiff incorporates and realleges, as though fully set forth herein, each

2    and every allegation set forth in the preceding paragraphs of this Complaint.

3        91.    By reason of the foregoing, Defendants have entered into agreements in

4    restraint of trade in violation of Alabama Code §§8-10-1 *et seq.*

5        92.    By reason of the foregoing, Defendants have entered into agreements in

6    restraint of trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

7        93.    By reason of the foregoing, Defendants have entered into agreements in

8    restraint of trade in violation of California Bus. & Prof. Code §§16700 *et seq.* and Cal. Bus. &

9    Prof. Code §§17200 *et seq.*

10       94.    By reason of the foregoing, Defendants have entered into agreements in

11   restraint of trade in violation of District of Columbia Code Ann. §§28-4503 *et seq.*

12       95.    By reason of the foregoing, Defendants have entered into agreements in

13   restraint of trade in violation of Iowa Code §§553.1 *et seq.*

14       96.    By reason of the foregoing, Defendants have entered into agreements in

15   restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.*

16       97.    By reason of the foregoing, Defendants have entered into agreements in

17   restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

18       98.    By reason of the foregoing, Defendants have entered into agreements in

19   restraint of trade in violation of Michigan Comp. Laws. Ann. §§445.773 *et seq.*

20       99.    By reason of the foregoing, Defendants have entered into agreements in

21   restraint of trade in violation of Minnesota Stat. §§325D.52 *et seq.*

22       100.    By reason of the foregoing, Defendants have entered into agreements in

23   restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

24       101.    By reason of the foregoing, Defendants have entered into agreements in

25   restraint of trade in violation of Nebraska Rev. Stat. §§59-801 *et seq.*

26       102.    By reason of the foregoing, Defendants have entered into agreements in

27   restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A *et seq.*

28

- 21 -

1    103.    By reason of the foregoing, Defendants have entered into agreements in

2    restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 *et seq.*

3    104.    By reason of the foregoing, Defendants have entered into agreements in

4    restraint of trade in violation of North Carolina Gen. Stat. §§75-1 *et seq.*

5    105.    By reason of the foregoing, Defendants have entered into agreements in

6    restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 *et seq.*

7    106.    By reason of the foregoing, Defendants have entered into agreements in

8    restraint of trade in violation of the Pennsylvania common law.

9    107.    By reason of the foregoing, Defendants have entered into agreements in

10    restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1 *et seq.*

11    108.    By reason of the foregoing, Defendants have entered into agreements in

12    restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

13    109.    By reason of the foregoing, Defendants have entered into agreements in

14    restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 *et seq.*

15    110.    By reason of the foregoing, Defendants have entered into agreements in

16    restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

17    111.    By reason of the foregoing, Defendants have entered into agreements in

18    restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

19    112.    Class Members in each of the states listed above paid supra-competitive

20    and artificially inflated prices for TFT-LCD Products. As a direct and proximate result of

21    Defendants' unlawful conduct, these members of the Class have been injured in their business

22    and property in that they paid more for TFT-LCD Products than they otherwise would have paid

23    in the absence of Defendants' unlawful conduct.

24
**Fifth Claim for Relief**
**(Violation of State Consumer Protection and Unfair Competition Laws)**

25    113.    Plaintiff incorporates and realleges, as though fully set forth herein, each

26    and every allegation set forth in the preceding paragraphs of this Complaint.

27

28

- 22 -

114.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

115.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§45.50.471 *et seq.*

116.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 *et seq.*

117.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 *et seq.*

118.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 *et seq.*

119.     Defendants have engaged in unfair competition or unfair or deceptive ads or practices in violation of Florida Stat. §501.201 *et seq.*

120.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480 *et seq.*

121.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 *et seq.*

122.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 *et seq.*

123.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Rev. Stat. §51:1401 *et seq.*

124.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207. *et seq.*

125.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 *et seq.*

126.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 *et seq.*

- 23 -

1    127.    Defendants have engaged in unfair competition or unfair or deceptive acts

2    or practices in violation of New Mexico Stat. §57-12-1 *et seq.*

3    128.    Defendants have engaged in unfair competition or unfair or deceptive acts

4    or practices in violation of New York Gen. Bus. Law §349 *et seq.*

5    129.    Defendants have engaged in unfair competition or unfair or deceptive acts

6    or practices in violation of North Carolina Gen. Stat. §75-1.1 *et seq.*

7    130.    Defendants have engaged in unfair competition or unfair or deceptive acts

8    or practices in violation of Oregon Rev. Stat. §646.605 *et seq.*

9    131.    Defendants have engaged in unfair competition or unfair or deceptive acts

10   or practices in violation of Rhode Island Gen. Laws. §6-13.1-1 *et seq.*

11   132.    Defendants have engaged in unfair competition or unfair or deceptive acts

12   or practices in violation of South Carolina Code Laws §39-5-10 *et seq.*

13   133.    Defendants have engaged in unfair competition or unfair or deceptive acts

14   or practices in violation of Utah Code §13-11-1 *et seq.*

15   134.    Defendants have engaged in unfair competition or unfair or deceptive acts

16   or practices in violation of 9 Vermont §2451 *et seq.*

17   135.    Defendants have engaged in unfair competition or unfair or deceptive acts

18   or practices in violation of West Virginia Code §46A-6-101 *et seq.*

19   136.    Defendants have engaged in unfair competition or unfair or deceptive acts

20   or practices in violation of Wyoming Stat. §40-12-105.

21   137.    Class Members in the states listed above paid supra-competitive,

22   artificially inflated prices for TFT-LCD Products.  As a direct and proximate result of

23   Defendants' unlawful conduct, Plaintiff and the members of the Class have been injured in their

24   business and property in that they paid more for TFT-LCD Products than they otherwise would

25   have paid in the absence of Defendants' unlawful conduct.

**Sixth Claim for Relief**
**(Unjust Enrichment and Disgorgement of Profits)**

26

27   138.    Plaintiff incorporates and realleges, as though fully set forth herein, each

28   and every allegation set forth in the preceding paragraphs of this Complaint.

- 24 -

139.    Defendants have been unjustly enriched through overpayments by Plaintiff and Class members and the resulting profits.

140.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

141.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

2.    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

   a.  A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

   b.  An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Second and Fourth Claims for Relief herein;

   c.  Violations of the state consumer protection and unfair competition laws identified in the Third and Fifth Claims for Relief herein; and

   d.  Acts of unjust enrichment as set forth in the Sixth Claim for Relief herein.

3.    That Plaintiff and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

- 25 -

1    4.    That Defendants, their affiliates, successors, transferees, assignees, and the

2    officers, directors, partners, agents, and employees thereof, and all other persons acting or

3    claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1)

4    continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged

5    herein, or from entering into any other conspiracy alleged herein, or from entering into any other

6    contract, conspiracy or combination having a similar purpose or effect, and from adopting or

7    following any practice, plan, program, or device having a similar purpose or effect; and (2)

8    communicating or causing to be communicated to any other person engaged in the sale of TFT-

9    LCD Products, information concerning bids of competitors;

10    5.    That Plaintiff and members of the Class be awarded restitution, including

11    disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and

12    acts of unjust enrichment;

13    6.    That Plaintiff and members of the Class be awarded pre- and post-judgment

14    interest, and that that interest be awarded at the highest legal rate from and after the date of

15    service of the initial complaint in this action;

16    7.    That Plaintiff and members of the Class recover their costs of this suit, including

17    reasonable attorneys' fees as provided by law; and

18    8.    That Plaintiff and members of the Class have such other, further, and different

19    relief as the case may require and the Court may deem just and proper under the circumstances.

- 26 -

1

## DEMAND FOR JURY TRIAL

2     Plaintiff, on behalf of itself and the proposed Class, demands a jury trial in this action for

3  all of the claims so triable.

4

5  Dated: June 8, 2007

6                                               Jennie Lee Anderson

7                                      Lori E. Andrus
                                       Micha Star Liberty
8                                      Jennie Lee Anderson
                                       ANDRUS LIBERTY & ANDERSON LLP
9                                      1438 Market Street
                                       San Francisco, CA 94102
10                                     Telephone: (415)896-1000
                                       Facsimile: (415)-896-2249
11

12                                     Stan S. Mallison
                                       Hector R. Martinez
13                                     LAW OFFICES OF MALLISON & MARTINEZ
                                       1042 Brown Avenue, Suite A
14                                     Lafayette, CA 94549
                                       Telephone: (925) 283-3842
15                                     Facsimile: (925) 283-3426

16

17

18

19

20

21

22

23

24

25

26

27

28

- 27 -